IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 8:08CR482 |
| v. | ) | |
| KELLY STRAYER, | ) | MEMORANDUM AND ORDER |
| Defendant. | ) | |

This matter is before the court on the defendant's objections (Filing No. 31) to the report and recommendation ("R&R") of the magistrate judge (Filing No. 24, report, and Filing No. 34, oral findings on the record) denying the defendant's motion to suppress evidence and statements (Filing No. 18). The defendant is charged as follows: in Count I of the Indictment, with knowingly receiving and distributing visual depictions, that is, digital and computer images in files that had been mailed, shipped and transported in interstate and foreign commerce by any means, including by computer, the production of such visual depictions having involved the use of a minor engaging in sexually explicit conduct and were depictions of such conduct in violation of 18 U.S.C. § 2252A(a)(2); in Count II, with knowingly possessing one or more computer files and other matter to include movie files and image files which contained an image of child pornography, as defined in Title 18, United States Code, Section 2256, that had been shipped or transported in interstate commerce by any means, including by computer in violation of 18 U.S.C. § 2252A(a)(4)(B); and in Count III, with forfeiture of a Gateway 600YGR laptop computer bearing serial number 0027203931 and a Hitachi hard drive bearing serial number L2J6WT9G in violation of 18 U.S.C. § 2253. Filing No. 1, Indictment.

**STANDARD OF REVIEW**

Under 28 U.S.C. § 636(b)(1), the court makes a de novo determination of those portions of the R&R to which the parties object. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has conducted a de novo review of the record, including the transcript of the suppression hearing (Filing No. 34), the exhibits, and the relevant law. The court agrees with the magistrate judge's recitation of the facts and application of the law and will only briefly summarize them in this memorandum and order. The court overrules the defendant's objections to the R&R, denies defendant's motion to suppress, and adopts the R&R of the magistrate judge in its entirety.

**BACKGROUND**

In March 2005, agents from the Department of Homeland Security, Immigration and Customs Enforcement, began an investigation into Internet distribution of child pornography images. In January 2007, the investigation led the agents to search the computer of a Nebraska resident, Zachary McQuade. A search of Mr. McQuade's computer revealed email exchanges related to child pornography and containing thumbnail sketches of child pornography. Through their investigation, the agents discovered that these emails had been exchanged with an address identifying the computer of the defendant, Mr. Kelly Strayer.

On or about March 20, 2008, Special Agents Brent Morral, Clyde Buckley, and Ray Hernandez from the Department of Homeland Security, Immigration and Customs Enforcement, drove in one vehicle to the home of Mr. Strayer, a 23-year-old man, pursuant to the investigation into Internet distribution of child pornography. The agents had neither a search warrant for the computer nor an arrest warrant for Mr. Strayer. When they

2

arrived at the house, Agents Morral and Buckley went to the door, and Agent Hernandez stayed in the car. The agents wore cargo pants and long-sleeve shirts and did not show badges or guns.

When Agents Morral and Buckley arrived at the door, they knocked, and Mr. Strayer answered. Agent Morral identified himself and Agent Buckley as agents of the Department of Homeland Security, Immigration and Customs Enforcement, and asked if they could enter the house. Mr. Strayer permitted the agents to enter the apartment. Mr. Strayer lives in the house with his parents, who were not home at the time.

Agent Morral asked if the agents could question Mr. Strayer about his computer usage. Mr. Strayer agreed and led the two agents to the living room. In response to Agent Morral's questioning, Mr. Strayer said that he owned a laptop computer that was not working at the time. After some conversation about Mr. Strayer's computer and Internet usage, Agent Morral asked Mr. Strayer if he ever received child pornography on the Internet, and Mr. Strayer said that he did. When Agent Morral asked Mr. Strayer how much child pornography existed on his computer, he said there were probably a hundred or so images and movies on his laptop.

Agent Morral requested Mr. Strayer's consent for Agent Hernandez (who was still in the car) to conduct a forensic preview on Mr. Strayer's laptop computer. Mr. Strayer immediately answered in the affirmative. Agent Morral then called Agent Hernandez on the phone, told him to come in, met him at the door, and let him in the house.

Agent Hernandez was not able to complete the forensic preview, because he was missing part of the necessary equipment to do so. Agent Morral asked Mr. Strayer if the agents could remove the laptop from the house to conduct a forensic preview back at their

office. Mr. Strayer responded in the affirmative. Agent Morral filled out a receipt for property form, which Mr. Strayer signed. Agent Hernandez took the computer, and, during the forensic preview at the office, discovered potential child pornography. The agents locked down the computer and obtained a federal search warrant to conduct a full forensics examination on the hard drive of the computer.

## MOTION TO SUPPRESS

*I. Warrantless Access to the House - Fourth Amendment Rights.*

Mr. Strayer argues that the agents' entry into the house violated his Fourth Amendment rights, because the agents had no warrant and Mr. Strayer did not give voluntary consent. In order to determine whether Mr. Strayer gave his consent voluntarily, courts must consider the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973). Mr. Strayer asserts that a reasonable person would conclude that anyone in Mr. Strayer's position would have had no choice but to consent. Filing No. 32. The court disagrees. Agents Morral and Buckley came to the door of the house in civilian clothes, without badges or guns showing, stated their identity, and asked permission to come in and talk to Mr. Strayer. The magistrate judge concluded that when Agent Morral asked permission, Mr. Strayer invited the two agents to come into the house. There is no evidence in this record that the agents used any force, intimidation, deception, or coercion in obtaining Mr. Strayer's consent to enter the house. After reviewing the record, the court agrees with the magistrate judge and concludes that Mr. Strayer gave his consent to the entry by Agents Morral and Buckley.

The magistrate judge also concluded that when Agent Morral asked Mr. Strayer if Agent Hernandez could come in and do the forensic preview, Mr. Strayer cooperated fully

4

and gave his consent for Agent Hernandez both to come in and to do the forensic preview. Mr. Strayer argues that his rights were violated because Agent Morral called Agent Hernandez on the phone to notify him of the consent and then Agent Morral let Agent Hernandez in the door. Mr. Strayer contends that these facts negate his consent. Mr. Strayer cites no cases, and the court has found none, holding that the person giving consent must actually let the other person in at the threshold of the home. *See, e.g., United States v. Grow*, No. 99-CR-665 B , 2000 WL 33363288, at *10 (D. Utah, Sep. 13, 2000) (stating that it was not improper for officer to rely on prior consent to invite additional officers to enter the home). Thus the court finds this argument lacks merit. Rather, the court agrees with the magistrate judge that the agents acted reasonably and received the consent of Mr. Strayer, both for the entry of Agents Morral and Buckley and for the subsequent entry of Agent Hernandez. Accordingly, the findings of the magistrate judge are adopted in this regard.

*II.  Custodial Interrogation and Fifth Amendment / Miranda Rights*.

Mr. Strayer next asks the court to suppress the statements he made to the agents during the search, because the exchange constituted a custodial interrogation requiring the reading of *Miranda* rights. The record shows that the agents did not read *Miranda* rights to Mr. Strayer. The reading of *Miranda* rights must precede any custodial interrogation. *Miranda v. Arizona*, 384 U.S. 436 (1966); *United States v. Chamberlain*, 163 F.3d 499, 502 (8th Cir. 1998). A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. The court finds that the questioning of Mr. Strayer by the agents constituted an interrogation. Therefore,

5

the necessity of reading the *Miranda* rights turns on whether Mr. Strayer was in custody during the interrogation.

"Custody occurs either upon formal arrest or under *any other circumstances* where the suspect is deprived of his freedom of action in any significant way." *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990) (citing *Miranda*, 384 U.S. at 444; *Berkemer v. McCarty*, 468 U.S. 420, 429 (1984)) (emphasis in original). "In determining whether a suspect is 'in custody' at a particular time [the court] examine[s] the extent of the physical or psychological restraints placed on the suspect during interrogation in light of whether a 'reasonable person in the suspect's position would have understood his situation' to be one of custody." *Griffin*, 922 F.2d at 1347 (quoting *Berkemer*, 468 U.S. at 429 (1984)). The determination of whether Mr. Strayer was in custody is determined by examining several common, non-exhaustive "indicia of custody," including:

> (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.

*Griffin*, 922 F. 2d at 1349.

The indicia of custody as applied to this case indicate that Mr. Strayer was not in custody during the interrogation. Agent Morral did not inform Mr. Strayer that he could refuse to talk with the officers. Agent Morral did, however, tell Mr. Strayer that he was not under arrest. Agent Morral also told Mr. Strayer he was free to go to his sister's wedding in Jamaica. The magistrate judge found that the agents did not coerce or threaten Mr.

6

Strayer, that he fully and voluntarily consented to his conversation with the agents, and that he was fully cooperative, fully alert, and not impaired in any way. There is no evidence in this record that the agents used any force, intimidation, deception, or coercion or that they restrained the freedom of movement of Mr. Strayer during the interrogation. One agent, Agent Morral, asked all of the questions while Agent Morral, Agent Buckley, and Mr. Strayer sat together in the living room. The court finds that the magistrate judge correctly evaluated the indicia of custody and determined that this verbal exchange was not custodial. Accordingly, Mr. Strayer was not entitled to receive *Miranda* rights prior to the questioning, and the court adopts the R&R of the magistrate judge in this regard.

### III. *Warrantless Seizure of the Computer - Fourth Amendment Rights*.

Finally, Mr. Strayer argues that the agents' seizure of his computer violated his Fourth Amendment rights because the agents had no search warrant for the computer, and Mr. Strayer did not freely and voluntarily consent to the seizure. The magistrate judge found that upon discovering that they did not have the appropriate equipment to conduct a forensic preview at the house, the agents asked Mr. Strayer if they could take the computer with them to do the forensic preview at their office. The magistrate judge found that Mr. Strayer agreed and that he signed a receipt for the seized computer. The magistrate judge found that Mr. Strayer consented to the seizure and forensic preview search of the computer. The court agrees with the magistrate judge that Mr. Strayer consented to the seizure and subsequent search of the computer. Accordingly, the findings of the magistrate judge are adopted in this regard.

### *IV. The Fruit of the Poisonous Tree.*

Because this court agrees with the magistrate judge's findings and concludes that the agents' actions did not infringe on Mr. Strayer's constitutional rights, the exclusionary rule does not require suppression of the statements made and the evidence seized. In addition, the evidence subsequently obtained via the search warrant as applied to the hard drive of Mr. Strayer's computer need not be suppressed as the fruit of the poisonous tree. *Wong Sun v. United States*, 371 U.S. 471, 484-85 (1963).

THEREFORE, IT IS ORDERED:

1. Defendant's motion to suppress (Filing No. 18) is denied;

2. Defendant's objection (Filing No. 31) is overruled; and

3. The report and recommendation of the magistrate judge (Filing No. 24, report, and Filing No. 34, oral findings on the record) is adopted in its entirety.

DATED this 9th day of June, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge