IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | 8:08CR482 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | SENTENCING MEMORANDUM |
| KELLY STRAYER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for sentencing. This memorandum opinion supplements findings made on the record at a sentencing hearing on June 3, 2010.

## I.  BACKGROUND

### A.  Facts

The defendant was charged in Count I of the indictment with knowingly receiving and distributing visual depictions and attempting to receive depictions of a minor engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252A(a)(2), in Count II with knowingly possessing computer files containing an image of child pornography, in violation of 18 U.S.C. § 2252(a)(4)(B); and in Count III with forfeiture of the computer and hard drive used in Counts I and II under 18 U.S.C. § 2253. Filing No. 1, Indictment. Under 18 U.S.C. § 2252A, it is a crime to knowingly receive or distribute any child pornography that has been mailed, shipped, or transported in interstate or foreign commerce by any means, including by computer. 18 U.S.C. § 2252A(a)(2). The mandatory minimum sentence for receipt and distribution of child pornography (the crime charged in Count I) is five years and the maximum is twenty years. 18 U.S.C. § 2252A(b)(1). In contrast, possession of

child pornography (the crime charged in Count II) carries a maximum sentence of ten years for a first offender, with no minimum sentence.  18 U.S.C. § 2252 (b)(1).

Strayer entered a plea of guilty to Count I and agreed to forfeiture of the computer equipment involved in Count III.  Filing No. 49, Plea Agreement.  The government agreed to dismiss Count II at sentencing, to move for a three-level reduction for acceptance of responsibility, and to recommend a sentence at the low end of the Guidelines sentencing range.  The court accepted Strayer's plea of guilty but deferred acceptance of the plea agreement pending the preparation of a Presentence Investigation Report (hereinafter, "PSR") by the United States Office of Probation (hereinafter, "the Probation Office") that calculated Strayer's sentence under the United States Sentencing Guidelines ("the Guidelines").  Filing No. 46, Minutes.  An order of forfeiture was entered on April 9, 2010.  Filing No. 65.

In the PSR, the Probation Office based its outline of the offense conduct on the prosecutor's version of events.  Filing No. 76, PSR at 4.  As part of an Immigration and Customs Enforcement ("ICE") investigation of Internet users of "Google Hello" in the distribution of child pornography, ICE agents discovered that another individual had sent 103 thumbnail images of child pornography to Strayer.  *Id.*  In March of 2008, agents interviewed Strayer and he admitted to receiving child pornography images and consented to a search of his computer.  *Id.*  In the search of the computer, agents observed several movies involving prepubescent females being penetrated anally and vaginally by an adult male.  *Id.*  Several known child victims were identified by the Center for Missing and Exploited Children, including a victim known as "Vicky."  *Id.*  Subsequently, 139 videos and 176 images of child pornography were recovered from Strayer's computer, making him

2

accountable for 10,601 images of child pornography (139 videos x 75 images = 10,425 + 176 = 10,601). *Id.* at 5, 8. Nearly all of the images involved females between the ages of 8 and 10 and the defendant also possessed images that depicted bondage. *Id.* at 5.

The Probation Office determined that U.S.S.G. § 2G2.2(a)(2) provides a base offense level of 22 for Strayer's violation. *Id.* at 8. It found the following upward adjustments applicable: a two-level increase under U.S.S.G. § 2G2.2(b)(2) (for possession of material containing a prepubescent minor); a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) (for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain); a four-level increase under U.S.S.G. § 2G2.2(b)(4) (for material that portrays sadistic or masochistic conduct or other images of violence);[1] a two-level increase under U.S.S.G. § 2G2.2(b)(6) (for use of a computer); and a five-level increase under U.S.S.G. § 2G2.2(b)(7) (for possession of more than 600 images). *Id.* at 6. The application of these enhancements results in an adjusted offense level of 40. After subtracting three levels for acceptance of responsibility under U.S.S.G. § 3E1.1, Strayer's total offense level under the Guidelines is 37. *Id.* at 7. Strayer has zero criminal history points and his resulting criminal history category is I. *Id.* At offense level 37 and criminal history category I, Strayer's Guidelines range of imprisonment is 210 months (seventeen and one-half years) to 240 months (twenty years).[2] The government

---

[1]Under Eighth Circuit case law, the materials possessed by the defendant portray sadistic conduct. *United States v. Diaz*, 368 F.3d 991, 992 (8th Cir.2004); *United States v. Belflower*, 390 F.3d 560, 562 (8th Cir. 2004) (per curiam) (stating that images depicting an adult penetrating or attempting to penetrate a minor are per se sadistic because "[s]uch images portray conduct sufficient to presume the infliction of mental or physical coercion or abuse upon a minor.").

[2]Strayer's Guidelines sentence is capped at the statutory maximum. Otherwise, the high end of his recommended sentence would be 262 months (close to twenty-two years).

adopted the findings in the PSR and also moved for an order of restitution on behalf of the identified victim, "Vicky."  Filing No. 52 & Filing No. 60.

The defendant moved for a deviation or variance from the Guidelines range under 18 U.S.C. § 3553(a) based on his lack of a criminal record, the low likelihood that he presents a danger to minors and the fact that he has taken appropriate steps to address his conduct.  Filing No. 53.  He argues that the Guidelines do not provide an appropriate sentence for his conduct because they are not based on empirical evidence.  At the sentencing hearing, Strayer also moved for a downward departure based on his mental condition, his post-offense rehabilitation, and the fact that his conduct was aberrant behavior.

Strayer is twenty-six years old.  Filing No. 76,  PSR at 11.  He is a high school graduate and has attended community college.  He did not obtain a degree, although he maintained good standing at college.  He has been consistently employed or attending school for all of his adult life.  He has been employed at Costco in Omaha, Nebraska, since October of 2007 and had previously worked at Walmart.

A psychological evaluation indicates that Strayer's behavior is closer to that of an adolescent than that of a 25-year-old man.  He has been diagnosed as suffering from Dysthymic Disorder and Adjustment Disorder with Depressed Mood.  Psychological testing showed that Strayer is a person of high average to superior intelligence, but is pessimistic, socially introverted and disengaged and has significant anhedonia (absence of the ability to experience pleasure).  The evaluation also stated that Avoidant Personality Disorder could be ruled out and noted Strayer's problems with his social environment, his primary support group, and the legal system.  Strayer is receiving mental health counseling and his

counselor reports that he has made progress achieving the goals of treatment and his prognosis is positive. Strayer was not found to be a sexually dangerous person.

The government requests an order of restitution for the losses incurred by an individual known as "Vicky," (hereinafter, Vicky) who is allegedly portrayed in images found in Strayer's possession and has since attained the age of majority. Filing No. 60. The evidence shows that Vicky was raped by her father, who disseminated videos of the rape on the Internet. The videos have been widely distributed and are the subject of discussion on Internet blogs and in Internet chat rooms. In addition, several viewers have attempted to personally contact Vicky. The government has submitted victim impact statements by Vicky and her mother and has presented evidence that shows that Vicky suffers from panic attacks, depression, anxiety, chronic posttraumatic stress disorder, insomnia, dissociative disorder, an eating disorder, personality disorder, nightmares, and a deteriorating level of functioning. Filing No. 69, Index of Evidence, Exs. 5 & 7, Forensic Psychological Examinations. The record shows that Vicky will need continuing mental health treatment that is projected to cost up to $188,705. *Id.*, Ex. 7 at 8. She seeks restitution in the amount of $187,141.10, representing $231,891.10 in economic losses ($193,025 for future counseling expenses, $28,366.10 in out-of-pocket expenses for the evaluation, supporting records and travel, and $10,500 in apportioned attorneys' fees) less the $44,750 in restitution payments she has received to date. *See* Filing No. 69, Ex. 10.

The record also indicates that Vicky has been contacted within the past year by four individuals who sought to communicate with her about the images and is being stalked by a man who states he searched for her for five years on the Internet. Ex. 10, The government has also presented chat room dialogs that proliferate on the Internet concerning Vicky's images. *Id.*, Ex. 8.

5

The record shows that the government has presented claims for restitution throughout the country on behalf of Vicky and several other known victims. Filing No. 69, Index of Evid., Ex. 11. Of 38 claims submitted, seven courts have declined to order restitution. Other courts have ordered restitution in amounts ranging from $250 to $25,000, with most awards in the range of $1,000 to $3.000. Ex. 11. The government concedes that it must show that Vicky's mental injuries and financial damages were proximately caused by Strayer in order for Vicky to recover. Filing No. 68, Government Brief at 11. The government contends that an award of $10,000 would be appropriate in this case. *Id.* at 13.

### B.  LAW

#### 1.  Sentencing

The Sentencing Guidelines are no longer mandatory and the range of choice in sentencing dictated by the facts of the case has been significantly broadened. *See United States v. Booker,* 543 U.S. 220, 260-61 (2005); *Gall v. United States,* 552 U.S. 38, 59 (2007); *Kimbrough v. United States,* 552 U.S. 85, 101 (2007); *Rita v. United States,* 551 U.S. 338, 349-50 (2007); *Cunningham v. California,* 549 U.S. 270, 286-87 (2007). District courts must "give respectful consideration to the Guidelines," but are permitted "'to tailor the sentence in light of other statutory concerns as well.'" *Kimbrough,* 552 U.S. at 101 (quoting *Booker,* 543 U.S. at 245-246).

In imposing a sentence, the district court must consider the factors set out in the Sentencing Reform Act at 18 U.S.C. § 3553(a).[3] *Nelson v. United States,* 129 S. Ct. 890,

---

[3]Those factors are:

(1)  the nature and circumstances of the offense and the history and characteristics of the defendant;
(2)  the need for the sentence imposed-
     (A)      to reflect the seriousness of the offense, to promote respect for the law, and to provide

891-92 (2009). That statute "contains an overarching provision instructing district courts to 'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Kimbrough,* 552 U.S. at 101 (quoting 18 U.S.C. § 3553(a)). Although the Guidelines remain "the starting point and the initial benchmark" in determining a sentence, they are not the only consideration. *Gall,* 552 U.S. at 49. "[T]he district court is free to make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration) the advice of the Guidelines." *Kimbrough,* 552 U.S. at 113 (Scalia, J., concurring). Further, the district court "may not presume that the Guidelines range is reasonable," but must "make an individualized assessment based on the facts presented." *Id.* at 50; *Nelson*, 129 S. Ct. at 892 ("The Guidelines are not only not mandatory on sentencing courts; they are also not to be *presumed* reasonable") (emphasis in original). The sentencing court must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors explaining any variance from the former with reference to the latter. *Nelson,* 129 S. Ct. at 891-92.

The Supreme Court rejects the notion that "'extraordinary' circumstances [are required] to justify a sentence outside the Guidelines range" and rejects "the use of a rigid

---

just punishment or the offense;

(B)   to afford adequate deterrence to criminal conduct;
(C)   to protect the public from further crimes of the defendant; and
(D)   to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3)   the kinds of sentences available;
(4)   the advisory guideline range;
(5)   any pertinent policy statements issued by the Sentencing Commission;
(6)   the need to avoid unwarranted sentence disparities; and
(7)   the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.* at 49. The court is free to consider "whether the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the 'heartland' to which the Commission intends individual Guidelines to apply, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless." *Rita*, 551 U.S. at 351 (citations omitted).

The court can consider whether the guideline at issue exemplifies the Sentencing Commission's "exercise of its characteristic institutional role" which is "to formulate and constantly refine national sentencing standards." *Kimbrough,* 552 U.S. at 108-09; *Rita,* 551 U.S. at 349-50. When operating within that institutional role, the Sentencing Commission "has the capacity courts lack" and can "'base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough,* 552 U.S. at 109 (quoting *United States v. Pruitt,* 502 F.3d 1154, 1171 (10th Cir. 2007) (McConnell, J., concurring)). In formulating the Guidelines, the Commission developed and used data on past practices and recidivism. *See* United States Sentencing Commission, *Fifteen Years of Guidelines Sentencing:  An Assessment of How Well the Federal Criminal Justice System is Achieving the Goals of Sentencing Reform* 72-73 (November 2004), available at http:// www.ussc.gov/ 15_ year/ 15_ year_ study_ full.pdf ("Fifteen-Year Assessment"); U.S.S.G. § 1A.1, intro. comment., pt. A, ¶ 3; *Kimbrough,* 552 U.S. at 96; *Gall,* 552 U.S. at 46 (noting that the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions"). The Commission established the offense levels for each crime,

linked to a recommended imprisonment range, based on these sentencing statistics. Fifteen-Year Assessment at 14. Accordingly, in many cases the Guidelines represent a reasonable estimation of a fair sentencing range. *See Kimbrough,* 552 U.S. at 109.

When Guidelines are not the result of "the Commission's exercise of its characteristic institutional role," such as when they are not based on any identified empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the "ordinary case," in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Id.* (quoting *Rita,* 551 U.S. at 350); *see also Gall,* 552 U.S. at 46 n.2. (noting that not all Guidelines are tied to empirical evidence). Consequently, the Guidelines that are not based on empirical evidence are a less reliable appraisal of a fair sentence. *See Kimbrough,* 552 U.S. at 109-110. In such cases, it is "not an abuse of discretion for a district court to conclude when sentencing a particular defendant" that application of the guideline "yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case." *Kimbrough,* 552 U.S. at 110; *see also Spears v. United States,* 129 S. Ct. 840, 843 (2009) (per curiam) (clarifying that "district courts are entitled to reject and vary categorically from the crack-cocaine Guidelines based on a policy disagreement with those Guidelines"); *United States v. O'Connor,* 567 F.3d 395, 398, n.4 (8th Cir. 2009) (assuming without deciding that *Kimbrough's* holding extends beyond the crack-cocaine Guidelines); *United States v. Huffstatler,* 571 F.3d 620, 624 (7th Cir. 2009) (noting that district courts may "have the freedom to sentence below the child-pornography guidelines based on disagreement with the guidelines," but are not required to do so).

Both for policy reasons and because Congress had enacted mandatory minimum sentences, the Commission departed from past practices in setting offense levels for child abuse crimes and sexual offenses. Fifteen-Year Assessment at 15, 72-73; United States Sentencing Commission, *The History of the Child Pornography Guidelines* 44-48 (October 2009), available at http://www.ussc.gov/ full.pdf ("Child Porn. History Rep't") (discussing the Commission's approach to setting a base offense level that corresponds to a mandatory minimum sentence); Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (July 3, 2008), available at http://mow.fd.org/index.shtm (unpublished comment, last visited June 7, 2010). The Guidelines for child exploitation offenses were not developed under the statistical approach, but were promulgated, for the most part, in response to statutory directives.[4] Child Porn. History Rep't at 6 (stating "Congress has specifically expressed an intent to raise penalties associated with certain child pornography offenses several times through directives to the Commission and statutory changes aimed at increasing the guideline penalties and reducing the incidence of downward departures for such offenses" and noting that "[the Commission] must bow to the specific directives of Congress"); *see, e.g.,* U.S.S.G. App. C, Vol. I, Amends. 435 & 436 (Nov. 27 1991), 537 & 538 (Nov. 1, 1996);

---

[4]Over the years, Congress has passed numerous laws of increasing severity that regulate child pornography and exploitation of children. *See, e.g.,* the Protection of Children Against Sexual Exploitation Act of 1977, *codified as amended* at 18 U.S.C. §§ 2251-2253; the Child Protection Act of 1984, *codified as amended* at 18 U.S.C. § 2253; the Child Protection and Obscenity Enforcement Act of 1988, *codified as amended* at 18 U.S.C. §§ 2251 & 2252(a); the Sex Crimes Against Children Act of 1995, *codified as amended* at 18 U.S.C. §§ 2251 & 2252; the Child Pornography Prevention Act of 1996, *codified as amended* at 18 U.S.C. § 2251 (extending the prohibition against child pornography to sexually explicit images that appear to depict minors but were produced without using any real children), *invalidated as unconstitutional* in *Ashcroft v. Free Speech Coal.,* 535 U.S. 234 (2002), & 2252A; the Protection of Children from Sexual Predators Act of 1998, *codified as amended* at 18 U.S.C. § 2426; the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act of 2003 ("PROTECT Act"), *codified as amended* at 18 U.S.C. § 2252B; the PROTECT Our Children Act, Pub. L. No. 110–401, § 304 (2008).

Vol. II, amends. 592 (Nov. 1, 2000), 615 (Nov. 1, 2001), 649 (April 30, 2003); Supp. Vol., amends. 651 (Oct. 27, 2003), 664 (Nov. 1, 2004); United States Sentencing Commission, *Report to Congress: Sex Offenses Against Children, Findings and Recommendations Regarding Federal Penalties* (June 1996), available at http://www.ussc.gov/reports.htm (last visited June 7, 2010) ("Sex Offenses Rep't").

At the inception of the Guidelines, simple possession of child pornography was not a crime and the now-applicable Guideline provision, § 2G2.2, only applied to "transporting, receiving, or trafficking" offenses. *See* U.S.S.G. § 2G2.2 (1987). The acts of possession and possession with intent to distribute child pornography criminalized as part of the Crime Control Act of 1990. *See* Pub. L. 101-647, § 323(b), 104 Stat. 4789, 4818-19 (1990); *United States v. Vig,* 167 F.3d 443, 449 (8th Cir. 1999) (noting the expansion of Congress's enforcement authority as a result of the criminalization of the mere possession of child pornography). Correspondingly, Congress directed the Sentencing Commission to "amend existing Guidelines for sentences involving sexual crimes against children . . . so that more substantial penalties may be imposed if the Commission determines current penalties are inadequate." Pub. L. 101-647, 1990 S. 3266, Title III, § 323(a), (b), 104 Stat. 4789, 4819 (Nov. 29, 1990).

In 1991, over the objection of the Sentencing Commission, Congress, reacting to the erroneous perception that the Sentencing Commission had lowered the penalties for child pornography crimes, explicitly directed the Commission to alter the Guidelines to correspond to its perception of the Crime Control Act of 1990. *See Proceedings and Debates of the 102nd Congress, First Session,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, *H6737, *H6741 (Cong. Rec.) (1991). Originally, the Commission had

decided to treat receipt, as opposed to receipt with intent to traffic, as analogous to possession rather than to trafficking because receipt is a logical predicate to possession.[5] Child Porn. History Rep't at 19; U.S.S.G. App. C, Vol. I, Amend. 372.  Congress rejected the Sentencing Commission's advice and in doing so, abandoned the studied "empirical" approach to sentencing with respect to child pornography crimes.  See *Proceedings and Debates,* 137 Cong. Rec. H6736-02, H6736, H6741, 1991 WL 187764, at H6738 (Correspondence to Congressman Edward R. Roybal from Sentencing Commission Chairman William Wilkins); Child Porn. History Rep't at 19-22.  Congress explicitly directed the Sentencing Commission to, among other things, increase the base offense level for child pornography crimes; to include "receiving" pornography in the Guidelines section that covered trafficking and transporting; to increase the base offense level for receiving, transporting, and trafficking from 13 to 15; to add enhancements for the number of items possessed; and to add an enhancement for patterns of activity involving the sexual abuse or exploitation of a minor.  See 137 Cong. Rec. H6736-02*, H6741,* 1991 WL 187764, at H6741; Child Porn. History Rep't at 23-24.

In 1995, Congress again directed the Commission to increase penalties for child pornography and other sex crimes against children.  *See* U.S.S.G. App. C., Vol. I, Amends. 537 & 538 (November 1996) (implementing the Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774 (1995) (enacted); 141 Cong. Rec. H4122-01, 1995 WL 143978 (1995)); Child Porn. History Rep't at 26.  The

---

[5]The Commission proposed the creation of a separate guideline provision, § 2G2.4, with a base offense level of 10, to cover possessing, receiving, or transporting child pornography.  See Notice of Proposed Amendments to the Sentencing Guidelines, 56 Fed. Reg. 1846-01, 1863, 1991 WL 310646 (proposed Jan. 17, 1991).  Under the Sentencing Commission's proposal, trafficking would have continued to be covered in § 2G2.2, with a base offense level of 13.  *Id.* at 1863-64.

Sentencing Commission carried out that directive by increasing the base offense levels for producing, trafficking, and possessing child pornography by two levels and adding a two-level enhancement for use of a computer.  *See* Notice of Submission to Congress of Amendments to the Sentencing Guidelines, 61 Fed. Reg. 20,306, 20,307-08, 1996 WL 223875 (F.R.) (May 6, 1996) (to be codified at U.S.S.G. §§ 2G2.1, 2G2.2, 2G2.4); Child Porn. History Rep't at 27.  The Commission also clarified and broadened the definition of the "pattern of activity" enhancement to apply to conduct unrelated to the offense of conviction in order to "increase the sentences for the most dangerous offenders."  Sex Offenses Rep't, Executive Summary at i; *see* U.S.S.G. App C, Vol. I, amend. 537.

Congress also directed the Sentencing Commission to prepare a report and analysis of sex offenses against children and child pornography for submission to Congress.  Sex Crimes Against Children Prevention Act of 1995, Pub. L. No. 104-71, H.R. 1240, 104th Cong., 109 Stat. 774, 775 (1995) (enacted).  In its report to Congress, the Sentencing Commission noted that "[i]t appears that a significant portion of child pornography offenders have a criminal history that involves the sexual abuse and exploitation of children" and recommended that Congress increase statutory maximum sentences for production of child pornography and double the statutory maximum for offenders with prior convictions for sex abuse crimes.  Sex Offenses Rep't, Executive Summary at ii; Child Porn. History Rep't at 37 (noting that the enhancements were aimed at child pornography offenders with a history of abusing children).  The amendments and recommendations had the goal of "ensur[ing] lengthy incarceration of repeat sex offenders who show the greatest risk of victimizing children."  Sex Offenses Rep't, Executive Summary at i.  The Sentencing Commission acknowledged in its report, however, that federal prosecutions for child sex

offenses represented a small percentage of the total number of such cases nationwide, because the vast majority of sex offenses were prosecuted in state court.[6]  *Id.*  Noting that "[p]enalties for sex offenses against children have been increased in recent years and are quite severe," the commission nonetheless found amendment appropriate "to increase sentences for the most dangerous offenders."  *Id.*

Congress responded to the Commission's report with legislation that increased the penalties for child pornography, exploitation and abuse.  Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, 1998 H.R. 3494, 105th Cong., 112 Stat. 2974 (1998) (enacted).  It directed the Commission to increase penalties and add enhancements, and to clarify that distribution would include distribution for nonpecuniary gain.  *Id.,* 112 Stat. at 2980-82.  The Sentencing Commission consequently afforded expansive coverage to the meaning of distribution in U.S.S.G. § 2G2.2(b)(3)(A)-(F) and added several enhancements depending on the purpose and audience for the distribution. U.S.S.G. App. C, Vol. II, amend. 592 (Nov. 1, 2000); Child Porn. Rep't at 35-36.

In 2003, Congress enacted the Prosecutorial Remedies and Other Tools to End the Exploitation of Children Today Act (the "PROTECT Act"), which established a five-year mandatory minimum sentence for trafficking/receipt offenses, increased the statutory maximum for trafficking/receipt offenses from fifteen to twenty years and the maximum for possession offenses from five to ten years.  18 U.S.C. §§ 2252(a)(1)-(3) and 18 U.S.C. § 2252A(a)(1) - (4) and (6); *see also* The PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 653 (2003) (enacted); U.S.S.G. App. C, Vol. II, amend. 649

---

[6]In fact, the Commission's report was based on a study of only twenty-two Internet child pornography cases sentenced under U.S.S.G. § 2G2.2, the trafficking/receipt Guideline.  Sex Offense Rep't at 29.

(April 30, 2003).  In the PROTECT Act, Congress itself made direct amendments to the Guidelines by increasing the offense level for possession and distribution of images of sadistic or masochistic conduct and adding enhancements for the number and type of child pornographic images.  *See* The PROTECT Act, Pub. L. No. 108-21, 2003 S. 151, 108th Cong., 117 Stat. 650, 673 (2003); Child Porn. History Rep't at 39.  Congress also issued further directives to the Sentencing Commission.  *See* U.S.S.G. App. C, Supp. Vol., amend. 649 (Apr. 30, 2003), 664 (Nov. 1, 2004); Child Porn. History Rep't. at 41.  To conform to the new mandatory minimum sentences and higher statutory maxima, the Sentencing Commission raised base offense levels for trafficking/receipt offenses from 18 to 22 and base offense levels for possession from 15 to 18.  U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004)*;  Child Porn History Rep't at 49.*  The Commission noted that enhancements for use of a computer and number of images would be applicable in every case, thus ensuring that the Guideline sentences would approximate the statutory mandatory minimum sentences.  U.S.S.G. App. C, Supp. Vol., amend. 664 (Nov. 1, 2004)*; see also* Child Porn. History Rep't at 46-47.  In the fall of 2008, Congress again passed legislation relating to child pornography offenders.  PROTECT Our Children Act of 2008, Pub. L. No. 110–401, § 304, 122 Stat. 4229, *4243 (2008); Child Porn. History Rep't at 50. The PROTECT Our Children Act created a new offense at 18 U.S.C. § 2252A(a)(7) with a statutory maximum of 15 years, making it unlawful to produce or distribute "morphed images" of an identifiable minor.  *Id.*

The text and structure of the criminal child pornography statutes prohibit conduct across a spectrum of activity ranging from merely possessing child pornography to "mailing, transporting or shipping child pornography" to "knowingly receiving or distributing

child pornography" to "knowingly reproducing, advertising, promoting, presenting or distributing" child pornography to "knowingly selling or possessing with intent to sell" child pornography.   18 U.S.C. § 2252A(a)(1)-(4).   The clear focus of this legislation and concomitant Guidelines revision is on the patent evils of child pornography and the new dimension that computer technology adds to those evils.   *See* Child Pornography Prevention Act of 1996, Omnibus Consolidated Appropriations Act, Pub. L. No. 104-208, § 121, 1996 H.R. 3610, 104th Cong., 110 Stat. 3009, 3009-26 (1996); *see also* notes following 18 U.S.C.A. § 2251;  Child Porn. History Rep't at 30-31.   In particular, amendments to the Guidelines reflect Congressional concerns that "pedophiles, including those who use the Internet, are using child pornographic and obscene material to desensitize children to sexual activity, to convince children that sexual activity involving children is normal, and to entice children to engage in sexual activity."  U.S.S.G. App. C., Vol. 2, amend. 592 (Nov. 1, 2000); Child Porn. History Rep't at 30-31.   In drafting the Guidelines, the Commission was also interested in "how best to identify those offenders at the greatest risk of recidivism."  Child Porn. History Rep't at 37.  The primary victims of the crime of possession of pornography are the exploited children*.  See United States v. Rugh,* 968 F.2d 750, 756 (8th Cir. 1992).

The fairness of the Guidelines is heavily dependent on fair and reasonably consistent charging policies in the Department of Justice.  Fifteen-Year Assessment at 23-24.  The Commission has acknowledged that often "the value of a mandatory minimum sentence lies not in its imposition, but in its value as a bargaining chip to be given away in return for the resource-saving plea from the defendant to a more leniently sanctioned charge."  United States Sentencing Commission, *Special Report to Congress: Mandatory*

*Minimum Penalties in the Federal Criminal Justice System* 14-15 (August 1991) ("Mand. Min. Rep't"), available at http://www.ussc.gov/reports.htm (last visited Feb. 18, 2009).  The Commission also acknowledges that "[s]ince the power to determine the charge of conviction rests exclusively with the prosecution for the 85 percent of the cases that do not proceed to trial, mandatory minimums transfer sentencing power from the court to the prosecution" and "to the extent that prosecutorial discretion is exercised with preference to some and not to others," disparity is reintroduced into the system.  Mand. Min. Rep't at 1; *see also* Fifteen-Year Assessment at 89 (noting that research over the past fifteen years has "consistently found that mandatory penalty statutes are used inconsistently in cases in which they appear to apply").  The Commission reports that its efforts to ensure proportionality between the child pornography trafficking, receipt, and possession offenses with other crimes such as first degree murder, second degree murder, assault with intent to murder, conspiracy to commit murder, rape, production of pornography, voluntary manslaughter, kidnapping, and travel to engage in a sex act, have resulted in median sentences in fiscal year 2008 "of 78 months for offenders sentenced at §2G2.2 [for possessing and trafficking in material involving sexual exploitation of a minor]; 108 months for offenders who traveled to engage in a prohibited sexual conduct with a minor sentenced at §2G1.3(a); 139 months for criminal sexual abuse offenders sentenced at §2A3.1(a); and 240 months for production of child pornography offenders sentenced at §2G2.1."  Child Porn. History Rep't at 47 n. 219, 48 n.224.  The Commission also notes that "[s]entencing courts have also expressed comment on the perceived severity of the child pornography guidelines through increased below-guidelines variance and downward departure rates."  Child Porn. History Rep't at 54.

Sentencing courts are to consider "the history and characteristics of the defendant" as one of the § 3553(a) factors.  *See Rita*, 551 U.S. at 365 (Stevens, J., concurring). Although "[m]atters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines," they are "matters that § 3553(a) authorizes the sentencing judge to consider." *Id.* (citations omitted).  Amendments to the Guidelines that have been submitted to Congress and will become effective on November 1, 2010, will amend the Guidelines policy statements relating to age, mental and emotional conditions, physical condition, and military service as grounds for departure under U.S.S.G. §§ 5K2.0.  *See* 75 Fed. Reg. 27388-01, 27390 May 14, 2010).  Instead of stating that those factors "are not ordinarily relevant in determining whether a departure is warranted, the policy statements, as amended, will generally provide that age, mental and emotional conditions, and physical condition (including drug or alcohol dependence or abuse) or appearance, including physique, <u>may be relevant</u> in determining whether a departure is warranted, "if [the offender characteristic], individually or in combination with other offender characteristics, is present to an unusual degree and distinguishes the case from the typical cases covered by the guidelines." *Id.* (emphasis added).  The Commission adopted this proposed departure standard "after reviewing recent federal sentencing data, trial and appellate court case law, scholarly literature, public comment and testimony, and feedback in various forms from federal judges," for the purpose of providing sentencing courts "with a framework for addressing specific offender characteristics in a reasonably consistent manner" to "help 'secure nationwide consistency.'" *Id.* (quoting *Gall*, 552 U.S. at 49).

2.      Restitution

Under 18 U.S.C. § 2259, the court "shall order restitution" for any offense under statutes criminalizing sexual exploitation and abuse of children. 18 U.S.C. § 2259. Victims of child pornography are harmed by the creation of the images and a new harm is caused each time the images are distributed. *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 249 (2005). Also, the Supreme Court has recognized that "[t]he distribution of photographs and images depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children" and that "the harm to the child is exacerbated" when their images are circulated. *New York v. Ferber*, 458 U.S. 747, 759 (1982). Restitution is not only a means of making a victim whole, it also serves punitive and rehabilitative purposes. *See Hughey v. United States*, 495 U.S. 411, 418 (1990).

Under the statute, restitution is mandatory and a court cannot decline to issue restitution because of either the economic circumstances of the defendant or the fact that the victim is entitled to receive compensation for injuries from another source. 18 U.S.C. § 2259(b)(4). The term "victim" is defined in the statute as "the individual harmed <u>as a result</u> of the commission of" a child abuse or child exploitation crime. 18 U.S.C. § 2259(b)(4)(C). Restitution is also authorized by the Victim and Witness Protection Act, 18 U.S.C. § 3663(a), as incorporated into the Sentencing Guidelines, U.S.S.G. § 5E1.1. The government has the burden of demonstrating by a preponderance of the evidence the amount of loss sustained by a victim. 18 U.S.C. § 3664(e); *see United States v. Pierce*, 479 F.3d 546, 553 (8th Cir. 2007). Under 18 U.S.C. § 3664(h), a sentencing court is allowed, but not required, to "apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18

U.S.C. § 3664(h); *see United States v. Zander*, 319 F. App'x 146, 150 (3d Cir. 2009); *cf.*
*United States v. Crandon*, 173 F.3d 122, 126 n.2 (3d Cir. 1999) (holding that once
proximate cause is established, § 2259 requires the court to order restitution for the full
amount of the victim's losses, and there is nothing in § 2259 that provides for a
proportionality analysis).

The statue requires a causal connection between the victim's losses and the
defendant's offense. *See In re Amy*, 591 F.3d 792, 794 (5th Cir. 2009) (collecting cases
and affirming denial of restitution based on failure to show proximate cause); *United States
v. Searle,* 65 F. App'x 343, 346 (3d Cir. 2003) (ordering restitution to be paid to victims by
the producer of child pornography involving the victims); *United States v. Laney,* 189 F.3d
954, 965 (9th Cir. 1999) (holding that § 2259 "requires a causal connection between the
offense of conviction and the victim's harm" and ordering restitution to be paid to one victim
by a defendant who pled guilty to conspiracy to sexually exploit children, had participated
in chat rooms, and had made and disseminated a sexually explicit videotape of himself and
two other female children to co-conspirators who had actually abused the victim); *United
States v. Crandon*, 173 F.3d 122, 125 (3d Cir. 1999) (requiring showing of "proximate
cause" and stating that the offense conduct must be a "substantial factor" in the victim's
losses).

Section 2259 does "not impose[ ] a requirement of causation approaching
mathematical precision." *United States v. Doe,* 488 F.3d 1154, 1160 (9th Cir. 2007).
Nevertheless, the award must be a reasonable estimate and cannot be an "arbitrary
calculation." *See Laney,* 189 F.3d at 967 n.14. The strong congressional intent underlying

§ 2259 justifies relaxation of the usual bar against speculative future losses, depending on the type of loss claimed by the victim of child exploitation crimes.  *See United States v. Danser*, 270 F.3d 451, 455-56 & n. 5 (7th Cir. 2001).  A restitution award is proper "under Section 2259 if the district court is able to estimate, based upon facts in the record, the amount of the victim's loss with some reasonable certainty."  *Doe*, 488 F.3d at 1160. Evidence that attempted contacts with a victim "were a significant contributing factor in [the victim's] worsening depression and suicide ideation" will establish proximate cause. *Crandon*, 173 F.3d at 126.

II.    DISCUSSION

A.   Guideline Calculation

The court adopts the findings in the PSR.  Strayer's base offense level under the Guidelines is 22.  See U.S.S.G. § 2G2.2(a)(1).  The court finds the following adjustments are applicable:  a two-level increase under U.S.S.G. § 2G2.2(b)(2) for possession of material containing a prepubescent minor; a five-level increase under U.S.S.G. § 2G2.2(b)(3)(B) for an offense involving distribution for the receipt, or expectation of receipt, of a thing of value, but not for pecuniary gain; a four-level increase under U.S.S.G. § 2G2.2(b)(4) for material that portrays sadistic or masochistic conduct or other images of violence; a two-level increase under U.S.S.G. § 2G2.2(b)(6) for use of a computer; and a five-level increase under U.S.S.G. § 2G2.2(b)(7) for possession of more than 600 images. The court finds a downward adjustment for acceptance of responsibility is warranted. Strayer's resulting offense level is 37.   At criminal history category I, Strayer's recommended sentencing range under the Guidelines is 210 to 240 months.

B.   Departure

Under the Guidelines presently in force, the court finds that Strayer's motion for a downward departure should be denied.   However, Strayer would be entitled to a guideline departure by reason of his age and mental health under Guidelines amendments that will become effective on November 1, 2010.   The court will consider the proposed amendments to the Guidelines as reflecting the Commission's concern that those factors are properly considered in connection with the history and characteristics of the defendant. Accordingly, the factors will be addressed in connection with the defendant's motion for a variance under 28 U.S.S.G. § 3553(a).

C.   Section 3553(a) Factors

Strayer's motion for a deviation or variance from the Guidelines is granted.   The court finds a sentence outside the Guidelines is warranted in this case.  The court finds that a sentence of incarceration for 60 months (the mandatory minimum sentence for the count of conviction) followed by a term of supervised release of five years will fulfill the objectives of sentencing set out in Section 3553(a).

With respect to the nature and circumstances of the offense, the court finds that possession and distribution of child pornography are forms of sexual exploitation and are serious offenses.  Sexual exploitation offenses include the production of child pornography and the exploitation of children for the purposes of prostitution or the production of pornography, as well as trafficking in pornography.  Criminalizing the possession of child pornography is a necessary complement to laws banning distribution of such items, and is intended to destroy the market for exploitation of children.  Strayer's conduct falls close

22

to the low end of the continuum of criminal conduct—from possession to distribution to production to predatory abuse—that exploits children.  A possessor of child pornography is the least culpable in the chain and is a marginal player in the overall child exploitation scheme.  There are varying levels of participation and blameworthiness in connection with distribution, that are meant to be accounted for in the Guidelines' market-oriented scheme.  It is clear that the statutes criminalizing possession and distribution of child pornography are aimed at the widespread and profit-driven dissemination of child pornography that the Internet facilitates and fosters.  Although file-sharing arrangements help facilitate Internet trafficking in child pornography, there is a qualitative difference between sharing one's computer files and selling child pornography for profit.  This case does not involve any widespread distribution of child pornography or any pecuniary gain.  Also, there is some indication that Strayer's computer may have been inoperative to some extent, which would have limited widespread access to the files.  Although the evidence shows that Strayer distributed or shared files with at least one other person, the evidence does not show any large distribution network.  Strayer did not possess child pornography in order to entice a child nor is there any indication that he has ever had any improper contact with an actual child, or that he photographed minors engaged in sexual conduct, or ever made attempts to contact or entice a child.  Strayer is a low-level consumer and somewhat inadvertent distributor of child pornography whose sentence should fall closer to the low end of the statutory range than to the maximum.

In making this determination, the court has also considered Strayer's history and characteristics.  Strayer has several mental health problems.  He has no criminal record.

23

Based on the court's review of the record, it appears that Strayer's mental status contributed to his actions. Strayer's relative youth and mental condition must be considered in determining his culpability for his actions. His emotional immaturity lessens his culpability for his actions to some degree. Importantly, psychological testing shows that he is not a danger to children and at low risk of sexual violence.

The court has consulted the Guidelines and has used the Guidelines calculation as its initial starting point. However, the child pornography Guidelines are driven by Congressional directive and are not grounded in any scientific, statistical, or empirical method. The advice imparted in the Guidelines does not reflect the sort of empirical data, national experience and independent expertise that characterize the Sentencing Commission's institutional role. Given the flaws in the Guidelines scheme for punishment of Internet child pornography crimes, they need not be accorded a high degree of deference by the court. The Sentencing Commission diverged significantly from its studied, empirical approach in formulating the Guidelines that apply to Strayer's case and the result is a recommended sentence that is greater than necessary to provide just punishment. Although downloading child pornography is hardly a harmless activity, it is not equivalent to direct physical abuse or sexual molestation of children, or to the production of pornography involving children. The court finds that the Guidelines ranges may be appropriate for a sexual predator, but they are not a reliable appraisal of a fair sentence in this case.

The Guidelines sentencing scheme for child pornography crimes illogically skews sentences for "average" defendants to the upper end of the statutory range, regardless of

the particular defendant's acceptance of responsibility, criminal history, specific conduct, or degree of culpability, thus blurring distinctions between the least culpable and the worst offenders.[7]  In the context of this and most Internet child pornography crimes that involve peer-to-peer networks, the Guidelines provide little distinction between a low-level distributor and a high-level distributor.  In this court's experience, there is essentially no Internet child pornography offender who could end up with a Guidelines recommended sentence that falls at or close to the low end of the statutory range of five years to twenty years.  A five-year sentence equates with a Guidelines offense level of 25.  With the base offense level established at 22, and a two-point enhancement for use of a computer that is applied in every Internet child pornography case, only an offender who merely received pornography and did not distribute it at all and had fewer than ten images that did not contain any of the images of prepubescent minors and sadistic or masochistic acts that are widely prevalent in child pornography would receive a sentence at the low end of the statutory range.  Because of the nature of peer-to-peer file sharing programs, a simple possessory crime evolves into a distribution offense as soon as someone accesses a shared file.  In virtually every child pornography prosecution, the application of numerous and severe enhancements results in a low-end Guidelines sentence close to the statutory maximum.  In this case, as in most, a fairly typical offender with no criminal history has a recommended Guidelines imprisonment range that closely approaches the statutory

---

[7]In this case, the application of numerous enhancements inordinately increases Strayer's Guidelines range of imprisonment.  The Guideline enhancements raise his offense level from 22 to 37 on a scale that tops out at level 43.  Offense levels at or near the top of the sentencing table are generally reserved for only the most serious of offenses and the most dangerous of offenders.  The defendant does not belong in that category.

maximum at the low end and exceeds it at the high end. The upper end of the recommended Guidelines range would exceed the statutory maximum by over two years if it were not capped at the statutory maximum. In many cases, the low end of the Guidelines range is above the statutory maximum.

Strayer, and most defendants, are subject to enhancements for use of a computer and for the number and type of images that apply in virtually every case. The Internet has become the typical means of obtaining child pornography, and Internet child pornography cases are essentially the only kind of child pornography crime prosecuted in federal court. The enhancements for use of a computer and number of images lack value as a reliable proxy for culpability and are a poor gauge of relative levels of fault between offenders. Because of the unfortunate ease with which large numbers of images can be accessed and stored, most child pornography offenders are subject to enhancements from two to five levels for the number of images.[8]

In this type of distribution scheme, the number of images does not provide the distinction between a large-scale and a small-scale child pornography purveyor that Congress and the Sentencing Commission must have envisioned when promulgating this market-based and quantity-driven scheme. For example, in contrast to drug quantity in a drug-trafficking prosecution, where the amount of a drug a defendant possesses may have some correlation to his position in a distribution hierarchy, the number of images a defendant possesses is meaningless as an indicator of any position in a pornography

---

[8]A five-level enhancement is provided for possession of more than 600 images. In the court's experience, virtually all offenders fall in that category, with most possessing thousands of images.

distribution system.  The images can be endlessly replicated.  Whatever connection there may be between a defendant's relative guilt and the number of images he possesses, an enhancement of five levels for possession of over 600 images overstates that connection. The increased dangers and harms that make distribution a more serious crime than possession are accounted for in the statutory scheme by the mandatory minimum sentence provided in Section 2252A, and need not be augmented by Guidelines enhancements that further increase a defendant's sentence.

As noted, Strayer was originally charged with a violation of 18 U.S.C. § 2252(a)(4)(B), possession of child pornography, as well as 2252A(a)(2), receipt and distribution of child pornography.  In the context of most Internet child pornography crimes, there is no real distinction between the crimes charged under 18 U.S.C. § 2252A(a)(2) (receipt and distribution) and those charged under 2252(a)(4)(B) (possession), since both statutes criminalize "receipt" of child pornography.  One must receive child pornography in order to possess it via the Internet.  Because "receipt" is equated with distribution in the sentencing scheme, the prosecutor is left with unfettered discretion in charging and plea bargaining decisions.

The court finds the seventeen-and-a-half to twenty-year sentence recommended under the Guidelines (based on the imposition of numerous and excessive enhancements for circumstances that appear in nearly every child pornography case such as use of the Internet, amassing numerous images, possessing images of prepubescent minors and violence, and some "distributing" of images in return for other images) is greater than necessary to protect the public and to deter Strayer from re-offending.  The mandatory

minimum sentence of five years is appropriate to achieve the goals of sentencing in this case. Five years is a significant term of imprisonment for a first offender. The public will be adequately protected by a five-year term of supervised release with strict conditions and by the provision of mental health treatment and sex offender treatment to Strayer.

The mere fact of the prosecution of these cases arguably deters others from engaging in this sort of conduct. The additional deterrent value of a sentence any longer than five years would be marginal. With respect to general deterrence, although conduct like Strayer's may sustain the market for child pornography, much of that market is driven by compulsive behavior that arguably will not be deterred in any event. The deterrent effect of a lengthy sentence is further lessened by the international character of the market for child exploitation offenses. To the extent that harsh punishment is necessary to deter harm to children, punishing a less-culpable offender as harshly as the worst does not satisfy the goals of sentencing and encourages disrespect for the law.

The court has also considered the need to avoid sentencing disparities. The history of legislative enactments in this area reflects Congressional concern with the use of computers to lure or entice children into sex acts. Possession of child pornography was criminalized in part because of concerns that the Internet facilitated access to and enticement of minors for sexual exploitation, as well as concerns that pedophiles use the materials to desensitize and entice victims. This case does not involve such conduct and there is no indication that Strayer is likely to engage in any such conduct in the future. Legislative history also shows concern with dangerous child abusers and repeat offenders. The enhancements of increasing severity for quantity and for recidivism are designed to

28

apply to the most dangerous of child pornography offenders and Strayer does not fall in that category.  There is no evidence that he has ever abused, or is likely to abuse, children.  The evidence establishes that Strayer is not likely to commit further crimes.  Strayer's lack of a criminal history and low risk of reoffending suggests that a sentence of five years is likely to afford adequate punishment and deterrence.

The court further finds that an outside-the-Guidelines sentence will respect the distinction between Strayer's culpability and the far greater culpability of an actual predator or abuser.  The sentence of a purveyor or small-time distributor of child pornography should be proportional to and significantly lower than a sentence for an exploitative crime that involves acts of abuse by a defendant.  Moreover, the court finds that a sentence of five years is more proportional to other crimes than the recommended Guidelines sentence of over seventeen years.  Under the Guidelines scheme, a person who views child pornography on the Internet can receive a longer sentence that the actual perpetrators of child abuse and those who commit serious drug crimes, assaults and even murder. Strayer's sentence is close to the median sentence for a person sentenced for child pornography crimes under the provision that does not have a mandatory minimum sentence and is relatively proportional to the median sentences for defendants who engaged in more serious child sexual exploitation crimes such as production of child pornography, travel to engage in sexual conduct with a minor, or sexual abuse of minors.

D.    Restitution

The court finds that the government has shown that Vicky is a victim as defined in the statute who would be entitled to restitution for damages that result from the defendant's

29

conduct.  Undoubtedly everyone in the chain of distribution of the images—from the original abuser/producer of the materials to the end-users and possessors—contribute to the victim's ongoing harm.  The government has not quantified, however, any increased or incremental damage to Vicky that would reflect Strayer's contribution to her injuries and losses.

Vicky has suffered substantial mental and physical injuries as the result of the widespread dissemination of these materials.  It is clear that Strayer accessed the pornography that features Vicky and distributed it to at least one other person.  However, Vicky's damages are also attributable to innumerable others who have accessed the same pornographic material.  There is no evidence from which the court can discern the relative value of the incremental injury inflicted by Strayer's conduct as compared to the fault of the countless others who collectively inflicted these harms on Vicky.

Unlike others against whom restitution has been assessed, there has been no showing that this defendant committed any acts above and beyond the possession and limited dissemination of the material, such as creating Internet postings or Web pages featuring Vicky, contributing to blogs or chatrooms about Vicky, or attempting to contact her.  If any of that conduct were involved, the court would find a less tenuous causal connection between Vicky's substantial injuries and the actions of an individual defendant. Here, however, the government has not presented evidence from which the court could allocate damages or apportion fault on any basis other than making an arbitrary calculation.  The government has advanced no reasons for its contention that $10,000 would be an appropriate amount to award.  That is the amount assessed on another

30

defendant in this court, but that award was based on a consent decree.  Based on the record, the amount of Vicky's damages that can be apportioned to Strayer cannot be established with any reasonable certainty.

The evidence before the court shows that although most of Vicky's total injuries were caused by the original abuse, the widespread circulation and easy availability of the images continues to contribute significantly to her injuries.  Although the court is sympathetic to Vicky, the court is constrained from ordering restitution without a showing of proximate cause.  Notably, victims may pursue a civil action for damages under 18 U.S.C. § 2255.

A Judgment and Commitment and Statement of Reasons in accordance with this Sentencing Memorandum will issue this date.

DATED this 24th day of June, 2010.

BY THE COURT:


s/ Joseph F. Bataillon
Chief United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.